IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **TARRANT COUNTY SENIOR LIVING** | § | |
| **CENTER, INC.**[1] | § | **CASE NO. 24-33082** |
| | § | |
| Debtor. | § | |

**DEBTOR'S PREPACKAGED PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

THIS CHAPTER 11 PLAN OF REORGANIZATION IS BEING SOLICITED FOR
ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 OF THE
BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE
BANKRUPTCY CODE.  THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE
BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE
DEBTOR'S FILING OF A CHAPTER 11 CASE.

---

Dated:  August 30, 2024

---

[1] The last four digits of the Debtor's federal tax identification number are 8602.

## TABLE OF CONTENTS

**SECTION 1. DEFINITIONS AND INTERPRETATION**..................................................... 1

   1.1 Definitions. ............................................................................................................. 1

   1.2 Interpretation, Application of Definitions, and Rules of Construction........................... 10

   1.3 References to Monetary Figures. ........................................................................... 10

   1.4 Computation  of  Time........................................................................................... 10

   1.5 Controlling Document. ........................................................................................ 10

**SECTION 2. ADMINISTRATIVE AND PRIORITY CLAIMS**........................................ 11

   2.1 Treatment of Administrative Expense Claims Incurred in the Ordinary Course of Business. ......... 11

   2.2 Treatment of Fee Claims. .................................................................................... 11

   2.3 Treatment of Priority Tax Claims. ........................................................................ 12

   2.4 Treatment of United States Trustee Statutory Fees. ................................................... 12

**SECTION 3. CLASSIFICATION OF CLAIMS**............................................................... 12

   3.1 Classification in General....................................................................................... 12

   3.2 Summary of Classification of Claims. .................................................................... 12

   3.3 Special Provision Governing Unimpaired Claims. .................................................... 13

   3.4 Separate Classification of Other Secured Claims. ..................................................... 13

   3.5 Voting; Presumptions; Solicitation. ....................................................................... 13

   3.6 No Waiver. ....................................................................................................... 13

**SECTION 4. TREATMENT OF CLAIMS** ..................................................................... 14

   4.1 Class 1: Priority Non-Tax Claims........................................................................... 14

   4.2 Class 2: Other Secured Claims. ............................................................................ 14

   4.3 Class 3: Bond Claims. ......................................................................................... 14

   4.4 Class 4: General Unsecured Claims. ...................................................................... 15

   4.5 Class 5: Subordinated Note Claims. ...................................................................... 15

**SECTION 5. MEANS FOR IMPLEMENTATION OF THIS PLAN**.................................. 15

   5.1 Refinancing Transaction. ..................................................................................... 15

   5.2 2024 Bond Documents. ....................................................................................... 16

   5.3 Series 2024 Bonds. ............................................................................................. 17

   5.4 Continued Corporate Existence. ............................................................................ 17

   5.5 Vesting of Assets in the Reorganized Debtor. .......................................................... 18

   5.6 Cancellation of Agreements, Security Interests, and Other Interests. ........................... 18

   5.7 Exemption from Registration Requirements; Trading of Securities. .............................. 18

   5.8 Exemption from Certain Transfer Taxes and Recording Fees. ..................................... 19

   5.9 Organizational Documents. ................................................................................... 19

i

5.10 Board of Directors and Officers of the Reorganized Debtor. ........................................... 19

5.11 Corporate Action. ........................................................................................................... 19

**SECTION 6. DISTRIBUTIONS. ............................................................................................ 20**

6.1 Distributions Generally. ................................................................................................... 20

6.2 Postpetition Interest on Claims. ....................................................................................... 20

6.3 Date of Distributions. ....................................................................................................... 20

6.4 Distribution Record Date. ................................................................................................ 21

6.5 Disbursing Agent. ............................................................................................................. 21

6.6 Delivery of Distributions. ................................................................................................ 21

6.7 Unclaimed Property. ......................................................................................................... 21

6.8 Satisfaction of Claims. ..................................................................................................... 22

6.9 Manner of Payment under the Plan. ................................................................................. 22

6.10 No Distribution in Excess of Amount of Allowed Claim. .............................................. 22

6.11 Rights and Powers of Disbursing Agent. ....................................................................... 22

**SECTION 7. PROCEDURES FOR RESOLVING CLAIMS. ................................................. 22**

**SECTION 8. ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ..................................................................................................................................... 23**

8.1 Assumption of Executory Contracts ................................................................................ 23

8.2 Inclusiveness. ................................................................................................................... 23

8.3 Determination of Cure Disputes and Deemed Consent. ................................................... 23

8.4 Survival of the Debtor's Indemnification Obligations. .................................................... 24

8.5 Compensation and Benefit Plans. .................................................................................... 24

8.6 Insurance Policies. ........................................................................................................... 25

8.7 Full Release and Satisfaction. .......................................................................................... 25

8.8 Reservation of Rights. ...................................................................................................... 25

8.9 Nonoccurrence of Effective Date. .................................................................................... 26

**SECTION 9. CONDITIONS PRECEDENT TO CONFIRMATION AND THE
EFFECTIVE DATE ................................................................................................................. 26**

9.1 Conditions Precedent to the Effective Date. .................................................................... 26

9.2 Waiver of Conditions Precedent. ..................................................................................... 26

9.3 Effect of Failure of Conditions. ....................................................................................... 27

**SECTION 10. EFFECT OF CONFIRMATION. ..................................................................... 27**

10.1 Compromise and Settlement of Claims and Controversies. ........................................... 27

10.2 Binding Effect. ............................................................................................................... 27

10.3 Discharge of Claims. ...................................................................................................... 27

10.4 Pre-Confirmation Injunction and Stays.......................................................................... 28

10.5 Subordinated Claims........................................................................................................ 28

10.6 Releases by the Debtor. .................................................................................................... 28

10.7 Exculpation....................................................................................................................... 30

10.8 Injunction. ........................................................................................................................ 31

10.9 Protection Against Discriminatory Treatment. ............................................................... 31

10.10 Preservation of Privilege and Defenses......................................................................... 31

10.11 Preservation of Causes of Action and Reservation of Rights....................................... 32

10.12 Release of Liens. ............................................................................................................ 32

10.13 Ipso Facto and Similar Provisions Ineffective. ............................................................ 32

**SECTION 11. RETENTION OF JURISDICTION** .............................................................. **33**

**SECTION 12. MISCELLANEOUS PROVISIONS** ............................................................... **35**

12.1 Modification and Amendments......................................................................................... 35

12.2 Revocation or Withdrawal of this Plan. .......................................................................... 35

12.3 Section 1125(e) Good Faith Compliance. ....................................................................... 35

12.4 Substantial Consummation. ............................................................................................. 36

12.5 Plan Supplement. ............................................................................................................. 36

12.6 Further Assurances. ......................................................................................................... 36

12.7 Exhibits Incorporated. ..................................................................................................... 36

12.8 Successors and Assigns. ................................................................................................... 36

12.9 Entire Agreement. ............................................................................................................ 36

12.10 Severability..................................................................................................................... 36

12.11 Governing Law. .............................................................................................................. 37

12.12 Notices............................................................................................................................ 37

12.13 Reservation of Rights. .................................................................................................... 38

# INTRODUCTION

Tarrant County Senior Living Center, Inc. d/b/a The Stayton at Museum Way (the "***Debtor***") proposes this prepackaged chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code for the resolution of outstanding claims against the Debtor.

Reference is made to the *Disclosure Statement for Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* for a discussion of the Debtor's history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## SECTION 1. DEFINITIONS AND INTERPRETATION

### 1.1 *Definitions.*

The following terms used herein shall have the respective meanings below:

***2024 Bond Documents*** means the Series 2024 Bond Indenture, the Series 2024 Loan Agreement, Amended Master Indenture (including the Series 2024 Note (as defined in the Disclosure Statement)), substantially in the forms attached to the Disclosure Statement as **Exhibit C**.

***Administrative Expense Claim*** means any Claim for costs and expenses of administration pursuant to sections 327, 328, 330, 365, 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the business of the Debtor; (b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930; and (c) Fee Claims.

***Affiliate*** means, with respect to any Entity, an "affiliate" as defined in section 101(2) of the Bankruptcy Code as if such entity were a debtor.

***Allowed*** means, with reference to any Claim against the Debtor, a Claim (a) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (c) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim and the Debtor, or (iii) pursuant to the terms of this Plan; *provided that*, the Reorganized Debtor shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise Unimpaired pursuant to the Plan; *provided further that*, no Claim shall be Allowed if it is subject to disallowance in accordance with section 502(d) of the Bankruptcy Code. An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an

1

Allowed Claim.  Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code, or by Final Order of the Bankruptcy Court, the term Allowed Claim shall not, for purposes of Distributions under this Plan, include interest, fees (including attorneys' fees), costs, or charges on such Claim from and after the Petition Date.

**Amended Master Indenture** means that certain *Amended and Restated Master Trust Indenture, Deed of Trust and Security Agreement*.

**Asset** means all of the right, title, and interest of the Debtor in and to property of whatever type or nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, mixed, intellectual, real and personal, tangible and intangible, and proceeds of any of the foregoing.

**Avoidance Actions** means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtor or the Estate under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

**Ballot** means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

**Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

**Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas having jurisdiction over the Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any local rules of the Bankruptcy Court.

**Bond Claim** means any Claim arising from, or related to, the Original Bond Documents and the Bonds, including any and all outstanding principal, which is owed in the amount $112,261,464.00, plus any and all accrued interest, fees (including, without limitation, professional fees), expenses, costs and other charges payable with respect to the Bonds, which Claims are Allowed pursuant to the Cash Collateral Order and this Plan.

**Bond Indenture** means that certain *Indenture of Trust*, dated as of January 1, 2020, between the Issuer and UMB, as predecessor to the Trustee.

**Bonds** means the Retirement Facility Revenue Bonds (The Stayton at Museum Way Project) Series 2020 issued by the Issuer on January 3, 2020.

**Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law or executive order to close in Dallas, Texas.

**Cash** means cash and cash equivalents including, without limitation, checks and wire transfers.

**Cause of Action** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including claims and causes of action arising under section 544, 545, 547, 548, 549, 550, and 551 of the Bankruptcy Code), (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer or preferential transfer claim.

**Chapter 11 Case** means the Debtor's case under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court.

**Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**Class** means any group of Claims classified under the Plan pursuant to section 1122 and 1123(a)(1) of the Bankruptcy Code.

**Collateral** means any Asset of the Estate that is subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

**Confirmation Date** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in the Chapter 11 Case.

**Confirmation Hearing** means the hearing to be held before the Bankruptcy Court on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

***Confirmation Order*** means the order entered by the Bankruptcy Court confirming this Plan in accordance with chapter 11 of the Bankruptcy Code and approving the Disclosure Statement and the other solicitation materials in respect of this Plan.

***Cure Amount*** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (a) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease of the Debtor and (b) permit the Debtor to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

***D&O Policy*** means any insurance policy, including tail insurance policies, for directors', members', trustees', and officers' liability maintained by the Debtor and in effect or purchased as of the Petition Date.

***Debtor*** means Tarrant County Senior Living Center, Inc. d/b/a The Stayton at Museum Way as debtor and debtor in possession, and includes the Estate.

***Debtor in Possession*** means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

***Definitive Documents*** means the definitive documents and agreements governing this Plan and the transactions contemplated thereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (a) this Plan (including all exhibits and supplements thereto); (b) the Disclosure Statement and the other solicitation materials in respect of this Plan; (c) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (d) the 2024 Bond Documents and related documentation and all security documents and other related loan documents; (e) the documents or agreements for the governance of the Reorganized Debtor, including any membership agreements and certificates of incorporation; (f) all management or consulting agreements of the Reorganized Debtor; (g) all agreements relating to Interests in the Reorganized Debtor, if applicable; and (h) such other documents, pleadings, agreements or supplements as may be reasonably necessary or advisable to implement the Refinancing, and in the case of all such documents described in clauses (a) through (h) acceptable in form and substance to the Trustee, the Plan Sponsor, and the Debtor.

***Disbursing Agent*** means any entity in its capacity as a disbursing agent under Section 6.5 hereof, including any Debtor or Reorganized Debtor, as applicable, that acts in such a capacity.

***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be altered, supplemented, modified, or amended from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

***Disputed*** means, with respect to a Claim, (a) any Claim, which Claim is disputed under section 7.1 of the Plan or as to which the Debtor has interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof

of claim was not timely or properly filed; (c) any Claim that is listed in the Schedules, if any are filed, as unliquidated, contingent, or disputed, and as to which no request for payment or proof of claim has been filed; or (d) any Claim that is otherwise disputed by the Debtor or Reorganized Debtor in accordance with applicable law or contract, which dispute has not been withdrawn, resolved, or overruled by a Final Order.  To the extent the Debtor disputes only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtor does not dispute, if any, and Disputed as to the balance of such Claim.

*Distribution* means Cash, property, interests in property, the Series 2024 Bonds, or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

*Distribution Record Date* means, except as otherwise provided in the Plan, the Effective Date; and distributions to holders of public securities will be made to holders thereof in a manner that is consistent with the customary practices of the Depository Trust Company in connection with such distributions.

*Effective Date* means the first Business Day selected by the Debtor on which (a) the conditions specified in section 8 of this Plan have been either satisfied or waived in accordance with the terms of section 8, and (b) no stay of the Confirmation Order is in effect.

*Estate* means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to section 541 of the Bankruptcy Code.

*Exculpated Party* means the Debtor.

*Executory Contract* means all contracts and leases to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

*Facility* means the continuing care retirement community owned and operated by the Debtor, known as "The Stayton at Museum Way."

*Fee Claim* means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by Professionals retained by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case.

*Final Order* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter which has: (a) not been reversed, stayed, modified, or amended, as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration, or rehearing was sought; provided, however, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rules 9023 or 9024 (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

*General Unsecured Claim* means any Claim against the Debtor that is not (a) a Secured Claim, (b) a Claim entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court, (c) a Bond Claim, (d) an Administrative Expense, or (e) a Subordinated Note Claim.

*Governmental Unit* has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

*Holder* means the legal or beneficial holder of a Claim.

*Impaired* means, with respect to a Claim, that such Class of Claims is impaired within the meaning of section 1124 of the Bankruptcy Code.

*Indemnification Obligation* means any existing or future obligation of the Debtor to indemnify, defend, reimburse, or limit the liability of, or to advances fees and expenses to, any of the Debtor's current and former directors, officers, equity holders, managers, members, agents, employees, accountants, investment bankers, attorneys, and other professionals of the Debtor who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of the Debtor, whether pursuant to agreement, the Debtor's memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

*Insurance Policies* means, collectively, all of the Debtor's insurance policies.

*Interest* means any ownership interest, including but not limited to, membership interests or other entitlement to participate in the organizational affairs of a nonprofit entity organized under the laws of the State of Texas, unit, or share in the Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in the Debtor), whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

*Issuer* means the Tarrant County Cultural Education Facilities Finance Corporation.

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Loan Agreement* means that certain *Loan Agreement*, dated as of January 1, 2020, between the Debtor and the Issuer.

*Original Bond Documents* means, collectively, the Bond Indenture, the Original Master Indenture, the Loan Agreement, and any other documents entered into in connection with the Bonds.

*Original Master Indenture* means that certain *Amended and Restated Master Trust Indenture, Deed of Trust and Security Agreement*, amended and restated as of January 1, 2020, between the Debtor and UMB, as predecessor to the Trustee, as amended by the Supplemental Master Indenture Number 3, dated as of January 1, 2020.

6

***Other Secured Claim*** means a Secured Claim other than a Bond Claim or Priority Tax Claim.

***Person*** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor.

***Petition Date*** means the date on which the Debtor commenced the Chapter 11 Case.

***Plan*** means this prepackaged chapter 11 plan of reorganization, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, exhibits, schedules, and supplements to this Plan that are contained in the Plan Supplement), as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and the terms hereof.

***Plan Sponsor*** means Buckner Retirement Services, Inc.

***Plan Supplement*** means the compilation of documents and forms of documents, schedules, and exhibits relevant to the implementation of this Plan, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, and the Plan Support Agreement.

***Plan Support Agreement*** means that certain *Plan Support Agreement*, dated as of February 7, 2024, by and among the Debtor, the Trustee, the Supporting Holders, and the Plan Sponsor, and any subsequent Entity that becomes a party thereto pursuant to the terms thereof, attached as **Exhibit B** to the Disclosure Statement.

***Priority Non-Tax Claim*** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Fee Claim, or Priority Tax Claims.

***Priority Tax Claim*** means any Claim of a Governmental Unit of a kind entitled to priority under section 507(a)(8) of the Bankruptcy Code.

***Pro Rata*** shall mean the proportion that that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class, unless this Plan otherwise provides.

***Professionals*** means all professionals employed in the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

***Proof of Claim*** means a proof of Claim filed against the Debtor in the Chapter 11 Case.

*Refinancing* means the tax-exempt refinancing of existing debt and certain other obligations of the Debtor to be implemented through this Plan.

*Refinancing Transaction* means one or more transactions pursuant to section 1123(a)(5) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and consummate the transactions provided for in the Plan Support Agreement, including (a) entry into the 2024 Bond Document, (b) the issuance of the Series 2024 Bonds, (c) the execution and delivery of appropriate agreements or other documents (including the Definitive Documents) containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and the Plan Support Agreement and that satisfy the requirements of applicable law; (d) the execution and delivery of appropriate instruments (including the Definitive Documents) of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and the Plan Support Agreements; and (e) all other actions that the Debtor or Reorganized Debtor, as applicable, determine are necessary or appropriate and consistent with the Plan Support Agreement.

*Reinstated* or *Reinstatement* means, with respect to Claims, that the Claims shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

*Related Persons* means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

*Released Parties* means (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Supporting Holders; (e) the Plan Sponsor, and (f) with respect to each of the foregoing entities, such entity and its predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, and all of their respective current and former officers, directors, principals, shareholders (regardless of whether such interests are held directly or indirectly), members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, investment managers, investment advisors, management companies, fund advisors, and other professionals and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Reorganized Debtor* means the Debtor, as reorganized pursuant to and under this Plan on or after the Effective Date, and its successors.

*Residency Agreements* means those certain agreements by and between the Residents and the Debtor, including all assisted living residency agreements, life care agreements, skilled nursing residency agreements, memory care agreements, and any additional documents related thereto, including any amendments, supplements, or addendums.

**Residents** shall mean all persons that currently reside at the Facility, or formerly resided at the Facility, and are or were parties to Residency Agreements.

**Schedules** means, the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and all amendments or supplements thereto filed by the Debtor with the Bankruptcy Court, if any.

**Secured Claim** means, when referring to a Claim: (a) secured by a Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property as (i) set forth in the Plan, (ii) agreed to by the Holder of such Claim and the Debtor, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

**Series 2024 Bonds** means the Tarrant County Cultural Education Facilities Finance Corporation Retirement Facility Revenue Bonds (The Stayton at Museum Way Project), Series 2024, to be issued by the Issuer pursuant to the 2024 Bond Documents in accordance with the terms and conditions set forth in this Plan.

**Series 2024 Bond Indenture** means that certain Indenture of Trust between the Issuer and the Trustee pursuant to which the Series 2024 Bonds will be issued.

**Series 2024 Loan Agreement** means that certain Loan Agreement between the Reorganized Debtor and the Issuer pursuant to which terms the proceeds of the Series 2024 Bonds will be loaned to the Reorganized Debtor.

**Subordinated Note** means that certain *Subordinated Promissory Note*, dated May 31, 2024, between the Debtor and Buckner Foundation, Inc.

**Subordinated Note Claims** means any Claim arising from, or related to, the Subordinated Note, including any and all outstanding principal, plus any and all accrued interest, fees (including, without limitation, professional fees), expenses, costs, and other charges payable with respect to the Subordinated Note, which Claims are Allowed pursuant to the Cash Collateral Order and this Plan.

**Supporting Holders** means, collectively, each (a) beneficial holder or investment manager or advisor for such beneficial holders that are signatories to the Plan Support Agreement holding, collectively, at least sixty-seven (67%) of the outstanding aggregate principal amount of all Bonds issued and (b) beneficial holder or investment manager or advisor for such beneficial holder of the Bonds that executes a joinder to the Plan Support Agreement pursuant to its terms.

**Trustee** means (a) BOKF, N.A., in its capacity as successor bond trustee under the Bond Indenture, (b) BOKF, N.A., in its capacity as successor master trustee under the Master Indenture, and (c) any successor trustee in either capacity.

**UMB** means UMB Bank, National Association, in its capacity as predecessor to the Trustee.

*Unimpaired* means, with respect to a Claim, a Class of Claims that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

*United States Trustee* means the Office of the United States Trustee for the Northern District of Texas.

*Voting Agent* means Kroll Restructuring Administration LLC.

*Voting Record Date* shall have the meaning ascribed to such term in the Disclosure Statement.

### 1.2 *Interpretation, Application of Definitions, and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time.   The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively.  The words "includes" and "including" are not limiting. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.   The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan.   The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.   Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit, or schedule as it may have been amended, restated, revised, supplemented, or otherwise modified.   If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter.   Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.   In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern.

### 1.3 *References to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### 1.4 *Computation of Time.*

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein

### 1.5 *Controlling Document.*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.   In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control

unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between the Plan and the 2024 Bond Documents, the terms of the 2024 Bond Documents shall control. In the event of an inconsistency between this Plan and the Confirmation Order, the Confirmation Order shall control. The provisions of the Plan, the 2024 Bond Documents, and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each.

## SECTION 2. ADMINISTRATIVE AND PRIORITY CLAIMS

2.1 *Treatment of Administrative Expense Claims Incurred in the Ordinary Course of Business.*

Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession, shall be paid by the Debtor or Reorganized Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing such liabilities.

2.2 *Treatment of Fee Claims.*

(a)   <u>Final Fee Applications</u>. All final requests for the allowance and payment of Fee Claims shall be filed no later than 45 days after the Confirmation Date unless such date is extended by order of the Bankruptcy Court. Any Fee Claim that is not asserted in accordance with this Section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of its Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim.

(b)   <u>Payment of Fee Claims</u>. All Professionals seeking payment of Fee Claims shall be paid (a) the full unpaid amount that is Allowed by the Bankruptcy Court as soon as reasonably practicable after the date that such Claim is Allowed by order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Fee Claim and the Debtor.

(c)   <u>Post-Confirmation Date Fees and Expenses</u>. On and after the Confirmation Date, the Debtor and the Reorganized Debtor, as applicable, will pay in cash in the ordinary course of business and without any further action or order of the Bankruptcy Court, the reasonable legal, professional, or other fees and expenses that are (i) related to implementation of the Plan and (ii) incurred by the Debtor or the Reorganized Debtor, as applicable, on and after the Confirmation Date.

On the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services provided after such date shall terminate, and the Debtor or Reorganized Debtor may employ and pay any post-Confirmation Date fees and expenses of any Professional without any further notice to or action, order, or approval of the Bankruptcy Court.

2.3 *Treatment of Priority Tax Claims.*

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the Allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim; *provided*, that Allowed Priority Tax Claims representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession, shall be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.

2.4 *Treatment of United States Trustee Statutory Fees.*

The Debtor and the Reorganized Debtor, as applicable, will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interest payable to the United States Trustee, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

**SECTION 3. CLASSIFICATION OF CLAIMS**

3.1 *Classification in General.*

Except as set forth herein, all Claims against in the Debtor are placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.   The Debtor has not classified Administrative Expense Claims, Fee Claims, and Priority Tax Claims.

This Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.   A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been satisfied, released, or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in section 4 herein.   This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

3.2 *Summary of Classification of Claims.*

The following table designates the Classes of Claims against the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired under the Plan, (b) entitled to vote to accept this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to

accept or reject this Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

| Class | Claims | Status | Entitled to Vote |
|-------|--------|--------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Deemed to Accept) |
| 3 | Bond Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| 5 | Subordinated Note Claims | Unimpaired | No (Deemed to Accept) |

### 3.3 *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or the Reorganized Debtor as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.4 *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject the Plan and receiving Plan Distributions.

### 3.5 *Voting; Presumptions; Solicitation.*

Only Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (a) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Holders of Claims in Class 3 shall receive ballots containing detailed voting instructions.

Holders of Claims in Classes 1, 2, 4, and 5 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, all such Holders are not entitled to vote to accept or reject the Plan.

### 3.6 *No Waiver.*

Nothing contained in the Plan shall be construed to waive the Debtor's or other Entity's right to object on any basis to any Claim.

## SECTION 4. TREATMENT OF CLAIMS

### 4.1 *Class 1: Priority Non-Tax Claims.*

(a)      **Treatment:**  The legal, equitable, and contractual rights of the Holders of Allowed Priority Non-Tax Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Priority Non-Tax Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Priority Non-Tax Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtor and the Holder of the Allowed Priority Non-Tax Claim against the Debtor.

(b)      **Impairment and Voting:**  Allowed Priority Non-Tax Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Priority Non-Tax Claims.

### 4.2 *Class 2: Other Secured Claims.*

(a)      **Treatment**:  The legal, equitable, and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by the Plan.   Except to the extent that a Holder of an Allowed Other Secured Claim agrees to different treatment, on the Effective Date each Other Secured Claim shall be Reinstated.

(b)      **Impairment and Voting:**  Allowed Other Secured Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Other Secured Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Other Secured Claims.

### 4.3 *Class 3: Bond Claims.*

(a)      **Treatment**: On the Effective Date, all of the Bond Claims shall be cancelled and discharged and in replacement thereof, each Holder of an Allowed Bond Claim shall receive, on account of its Allowed Bond Claims, its Pro Rata share of the Series 2024 Bonds.  For the avoidance of doubt, all fees and charges payable under the Original Bond Documents shall be paid on the Effective Date from the debt service reserve fund for the Bonds; *provided that* the remaining portion of the debt service reserve fund shall be no less than three million dollars ($3,000,000.00) after payment of such fees and charges.

(b)      **Impairment and Voting**: Bond Claims are Impaired.  Holders of Allowed Bond Claims are entitled to vote on the Plan.

(c)      **Allowance**: The Bond Claims shall be deemed Allowed on the Effective Date in the aggregate principal amount of $112,261,464.00 plus (i) any accrued

and unpaid interest thereon payable through the Effective Date, and (ii) any fees and charges, including any and all reasonable and documented expenses and other amounts payable under the Original Bond Documents.

### 4.4 *Class 4: General Unsecured Claims.*

(a)     **Treatment**: The legal, equitable, and contractual rights of the Holders of Allowed General Unsecured Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to different treatment, on and after the Effective Date, the Reorganized Debtor shall continue to pay or dispute each General Unsecured Claim in the ordinary course of business as if the Chapter 11 Case had never been commenced.

(b)     **Impairment and Voting**: Allowed General Unsecured Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed General Unsecured Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed General Unsecured Claims.

### 4.5 *Class 5: Subordinated Note Claims.*

(a)     **Treatment**:  The legal, equitable, and contractual rights of the Holder of Allowed Subordinated Note Claims are unaltered by the Plan.  On the Effective Date, each Allowed Subordinated Note Claim shall be Reinstated and shall be treated in accordance with the 2024 Bond Documents.

(b)     **Impairment and Voting**: Allowed Subordinated Note Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, Buckner Foundation Inc., the sole Holder of Allowed Subordinated Note Claims, is conclusively presumed to accept the Plan and is not entitled to vote to accept or reject the Plan, and the vote of such Holder shall not be solicited with respect to such Allowed Subordinated Note Claims.

(c)     **Allowance**:  The Subordinated Note Claims shall be deemed Allowed on the Effective Date.

## SECTION 5. MEANS FOR IMPLEMENTATION OF THIS PLAN

### 5.1 *Refinancing Transaction.*

On the Effective Date, the Debtor, the Reorganized Debtor, the Trustee, and any other Entities may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (a) the execution and delivery of appropriate agreements or other documents of restructuring, reorganization, disposition, or transfer containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or

obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation or formation and amendments thereto, reincorporation, merger, or consolidation with the appropriate governmental authorities under applicable law; (d) the Refinancing Transaction; and (e) all other actions that the Debtor or the Reorganized Debtor, as applicable, determines are necessary or appropriate including, without limitation, making filings or recordings that may be required by applicable law.

The Confirmation Order shall and shall be deemed to, under both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan.

5.2 *2024 Bond Documents.*

The Reorganized Debtor shall be authorized to enter into the 2024 Bond Documents on the Effective Date. On the Effective Date, and following the consummation of the Refinancing Transaction, the 2024 Bond Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms. The financial accommodations to be extended under the 2024 Bond Documents are being extended and shall be deemed to have been extended in good faith and for legitimate business purposes and are reasonable. On the Effective Date, all of the Liens and security interests to be granted in accordance with the 2024 Bond Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the 2024 Bond Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Reorganized Debtor, the Trustee, or any of Holders of Series 2024 Bonds), having first priority status on all Collateral subject only to such Liens and security interests as may be permitted under the 2024 Bond Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtor and the Entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.3 *Series 2024 Bonds.*

On the Effective Date, the Reorganized Debtor shall cause the Issuer to issue the Series 2024 Bonds, the primary economic terms of which are described below:[2]

| | |
|---|---|
| **Principal:** | $81,000,000 on the terms and conditions set forth in the 2024 Bond Documents. |
| **Rate of Interest:** | The Series 2024 Bonds will bear interest at a fixed rate of 5.75% per annum. |
| **Maturity Date:** | December 1, 2054 |
| **Collateral:** | Pursuant to the Amended Master Indenture, the Liens and security interests granted in the Original Master Indenture will continue to secure the obligations under the Amended Master Indenture including the Series 2024 Note. Pursuant to such grants, the Trustee has first priority Liens and security interests in substantially all of the Debtor's assets, including all real and personal property, including Debtor's Gross Revenues (as defined in the Amended Master Indenture), except as otherwise provided in the 2024 Bond Documents. |
| **Amortization** | The Series 2024 Bonds shall amortize pursuant to the Amortization Schedule attached as Addendum A to the Plan Support Agreement.[3] |

The issuance of the Series 2024 Bonds for distribution under this Plan is authorized without the need for further corporate action, and all of the Series 2024 Bonds issued or issuable under this Plan shall be duly authorized and validly issued under this Plan. The Reorganized Debtor shall cause to be delivered customary legal opinions and other documents in connection with the issuance of the Series 2024 Bonds, in form and substance acceptable to the Trustee, including, without limitation, the Opinion of Bond Counsel described in the 2024 Bond Documents, subject to such exceptions as are reasonably acceptable to the Trustee.

5.4 *Continued Corporate Existence.*

Except as otherwise provided in this Plan, the Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, the Reorganized Debtor, with all the powers of a corporation under the applicable law in the jurisdiction where the Debtor is incorporated or formed and under the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by this Plan or otherwise, and to the extent such

---

[2] The information set forth in the accompanying chart is solely for summary purposes. To the extent there is any discrepancy between the information set forth in the chart and the 2024 Bond Documents, the 2024 Bond Documents, copies of which are attached to the Disclosure Statement as <u>Exhibit C</u>, control.
[3] A copy of the Plan Support Agreement is attached as <u>Exhibit B</u> to the Disclosure Statement.

17

documents are amended, such documents are deemed to be under this Plan and require no further action or approval.

### 5.5 *Vesting of Assets in the Reorganized Debtor.*

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, including the Liens and security interests granted under the Original Bond Documents as such Liens and security interests continue to secure the obligations related to the 2024 Bond Documents, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor under this Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.   On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

### 5.6 *Cancellation of Agreements, Security Interests, and Other Interests.*

On the Effective Date, except to the extent otherwise specifically provided herein, including to the extent certain of the Original Bond Documents continue in existence pursuant to their amendment and restatement pursuant to the 2024 Bond Documents, all notes, instruments, certificates, and other documents evidencing the Bonds, shall be cancelled and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto (including, without limitation, any guarantee obligations of any non-Debtor Affiliates with respect to the Bond Claims) shall be discharged and the agents and Trustee thereunder shall be automatically and fully discharged from all duties and obligations thereunder.  Except to the extent certain security interests and Liens continue in existence pursuant to the amendment and restatement of the Original Bond Documents pursuant to the 2024 Bond Documents, all existing security interests and/or Liens and/or any other Secured Claims shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date.   Notwithstanding the foregoing, following confirmation of the Plan or the occurrence of the Effective Date, to the extent that the Original Bond Documents do not otherwise remain in effect pursuant to the 2024 Bond Documents, any credit document or agreement that governs the rights of any Holder of a Bond Claim shall continue in effect for purposes of (a) allowing Holders of such Allowed Claims to receive distributions under this Plan; (b) allowing and preserving the rights of the agents or representative of Holders of such Claims to make distributions on account of such Allowed Claims, as provided herein; (c) preserving all exculpations in favor of the Trustee; (d) allowing the Trustee to enforce any rights and obligations owed to it under this Plan or the Confirmation Order; (e) allowing the trustee to enforce its charging lien for fees and expenses under the Original Bond Documents; and (f) permitting the Trustee to appear and be heard in the Chapter 11 Case or in any proceeding in the Bankruptcy Court or any other court.

### 5.7 *Exemption from Registration Requirements; Trading of Securities.*

The offering, issuance, and distribution of Series 2024 Bonds issued under this Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act under section 3(a)(2) and 3(a)(4) of the Securities Act of 1933, as amended and under

18

section 1145(a)(1) of the Bankruptcy Code.   Any and all Series 2024 Bonds issued under this Plan will be freely tradable under the Securities Act by the recipients thereof.

### 5.8 *Exemption from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any Entity under, in contemplation of, in furtherance of, or in connection with this Plan, including (a) the issuance, distribution, transfer, or exchange of any debt, securities, instruments, documents, or other interest in the Debtor or the Reorganized Debtor; (b) the creation, modification, consolidation, or recording of any Lien, mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) any assumption, assignment, or sale by the Debtor of its interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (e) the grant of collateral under the Amended Master Indenture; (f) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, the Confirmation Order, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.9 *Organizational Documents.*

Subject to Section 5.1 of this Plan, the Reorganized Debtor shall enter into such agreements and amend its corporate governance documents to the extent necessary to implement the terms and provisions of this Plan.

### 5.10 *Board of Directors and Officers of the Reorganized Debtor.*

As of the Effective Date, the members of the board of directors and officers of the Debtor as of the Petition Date shall remain in their current capacities as director and officers of the Reorganized Debtor, in each case subject to the ordinary rights and powers of the board of directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to this Plan. From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation.

### 5.11 *Corporate Action.*

Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any

requirement for further action by Holders of Claims, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other Entity, including: (a) the assumption of Executory Contracts; (b) the execution of and entry into the 2024 Bond Documents; (c) the issuance and distribution of the Series 2024 Bonds as provided herein; and (d) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date). All matters provided for in this Plan involving the company structure of the Reorganized Debtor and any company action required by the Debtor or Reorganized Debtor, as applicable, in connection therewith shall be deemed to have occurred on and shall be in effect as of the Effective Date without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor or Reorganized Debtor, as applicable.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor or Reorganized Debtor, as applicable (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof), shall be authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, instruments, documents, and other agreements contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as applicable, including (a) the 2024 Bond Documents, (b) the Series 2024 Bonds, and (c) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under non-bankruptcy law. All counterparties to any documents described in this paragraph are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Bankruptcy Court.

## SECTION 6. DISTRIBUTIONS.

### 6.1 *Distributions Generally.*

The Disbursing Agent shall make all Distributions to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan.

### 6.2 *Postpetition Interest on Claims.*

Except as otherwise set forth in the Plan, the Plan Supplement, or the Confirmation Order, postpetition interest shall accrue, and shall be paid, on any Claims in the ordinary course of business in accordance with any applicable law, agreement, document, or Final Order, as the case may be, as if the Chapter 11 Case had never been commenced.

### 6.3 *Date of Distributions.*

Unless otherwise provided in the Plan, any Distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon thereafter as is practicable.

6.4 *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each Class, as maintained by the Debtor or its agents, shall be deemed closed, and there shall be no further changes in the record holders of any Claims after the Distribution Record Date.  Neither the Debtor nor the Disbursing Agent shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtor nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

6.5 *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Reorganized Debtor shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Reorganized Debtor) with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtor's or Reorganized Debtor's books and records.

6.6 *Delivery of Distributions.*

The Disbursing Agent shall issue or cause to be issued, the applicable consideration under the Plan and, subject to Bankruptcy Rule 9010, shall make all Distributions to any Holder of an Allowed Claim as and when required by the Plan at: (a) the address of such Holder on the books and records of the Debtor or its agents; or (b) at the address in any written notice of address change delivered to the Debtor or the Disbursing Agent, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.  If any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has been notified of the then-current address of such Holder, at which time or as soon thereafter as reasonably practicable such Distribution shall be made to such Holder without interest.

6.7 *Unclaimed Property.*

One year from the later of: (a) the Effective Date and (b) the date that is ten Business Days after the date a Claim is first Allowed, all Distributions payable on account of such Claim shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtor or their successors or assigns, and all claims of any other Person (including the Holder of a Claim in the same Class) to such Distribution shall be discharged and forever barred.  The Reorganized Debtor and the Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtor's books and records and the Bankruptcy Court's filings.

6.8 *Satisfaction of Claims.*

Unless otherwise provided herein, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.9 *Manner of Payment under the Plan.*

Except as specifically provided herein, at the option of the Debtor or the Reorganized Debtor, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

6.10 *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Distributions in excess of the Allowed amount of such Claim (plus any postpetition interest on such Claim solely to the extent permitted by Section 6.2 of the Plan).

6.11 *Rights and Powers of Disbursing Agent.*

(a)     Powers of Disbursing Agent.  The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Effective Date) or pursuant to the Plan or (B) as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(b)     Expenses Incurred on or After the Effective Date.  Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Reorganized Debtor, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date and any reasonable compensation and expense reimbursement Claims (including, without limitation, for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

## SECTION 7. PROCEDURES FOR RESOLVING CLAIMS.

Notwithstanding section 502(a) of the Bankruptcy Code, and except as otherwise set forth in the Plan, Holders of Claims need not file proofs of Claim with the Bankruptcy Court, and the Reorganized Debtor and Holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Case had not been commenced.  The Holders of Claims shall not be subject to any claims resolution process in the Bankruptcy Court in connection with their Claims and shall retain all their rights under applicable non-bankruptcy law to pursue their Claims against the Debtor or

Reorganized Debtor in any forum with jurisdiction over the parties.  Upon the Effective Date, any filed Claim, regardless of the time of filing, and including Claims filed after the Effective Date, shall be deemed withdrawn.  To the extent not otherwise provided in the Plan, the deemed withdrawal of a proof of Claim is without prejudice to such claimant's rights to assert its Claim in any forum as though the Debtor's Chapter 11 Case had not been commenced.  From and after the Effective Date, the Reorganized Debtor may satisfy, dispute, settle, or otherwise compromise any Claim without approval of the Bankruptcy Court.

## SECTION 8.  ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1 *Assumption of Executory Contracts.*

Except as otherwise provided in this Plan, each of the Executory Contracts of the Debtor, including the Residency Agreements, shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code.   Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract assumed pursuant to the Plan shall vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

Subject to resolution of any dispute regarding any Cure Amount, all Cure Amounts shall be satisfied by the Debtor or Reorganized Debtor, as the case may be, upon assumption or assignment, as applicable, of the underlying Executory Contracts.  Assumption or assignment, as applicable, of any Executory Contract pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, arising under any assumed Executory Contract at any time before the effective date of the assumption or assumption and assignment, as applicable.  Any proofs of Claim filed with respect to an Executory Contract that has been assumed or assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the deemed assumption of such Executory Contract.

### 8.2 *Inclusiveness.*

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each Executory Contract shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract.

### 8.3 *Determination of Cure Disputes and Deemed Consent.*

Any monetary amounts by which any Executory Contract to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor or Reorganized Debtor, as applicable, upon assumption thereof in the ordinary course of business.

Unless otherwise designated by the Debtor on a schedule of assumed contracts or in negotiation with the applicable counterparty to an Executory Contract, the proposed Cure Amount for an Executory Contract shall be deemed to be zero dollars ($0).

If there is a dispute regarding (a) any Cure Amount, (b) the ability of the Debtor to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective.  The Debtor reserves the right to reject any Executory Contract not later than thirty (30) days after the entry of a Final Order resolving any such dispute.  Any counterparty to an Executory Contract that fails to object timely to the proposed assumption and assignment of such Executory Contract or the relevant Cure Amount, shall be deemed to have assented to such assumption, assignment, and/or Cure Amount and shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or the amount of such Cure Amount thereafter.

### 8.4 *Survival of the Debtor's Indemnification Obligations.*

Any obligations of the Debtor pursuant to its corporate charter, by-laws, limited liability company agreement, memorandum and article of association, or other organizational documents to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtor or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtor shall not be discharged, impaired, or otherwise affected by the Plan; *provided*, that the Reorganized Debtor shall not indemnify officers, directors, members, or managers, as applicable, of the Debtor for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.  All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtor under the Plan and shall continue as obligations of the Reorganized Debtor.  Any claim based on the Debtor's obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be required to indemnify the Debtor's managers, directors, officers, or employees for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtor's organizational documents, or applicable agreements governing the Debtor's indemnification obligations.

### 8.5 *Compensation and Benefit Plans.*

All employment and severance agreements and policies, and all compensation and benefits plans, policies, and programs of the Debtor applicable to its employees, retirees, consultants, contractors, and non-employee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

### 8.6 *Insurance Policies.*

(a)    All Insurance Policies to which the Debtor is a party as of the Effective Date, including the D&O Policy, shall be deemed to be and treated as Executory Contracts and shall be assumed by the Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.  All Insurance Policies shall vest in the Reorganized Debtor.  Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

(b)    In addition, after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.

(c)    Nothing in this Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the Insurance Policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtor shall retain all rights and defenses under such Insurance Policies.  The Insurance Policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date.

### 8.7 *Full Release and Satisfaction.*

Assumption of any Executory Contract pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract at any time before the effective date of the assumption.

### 8.8 *Reservation of Rights.*

(a)    Neither the exclusion nor the inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is or is not an Executory Contract or that the Debtor or the Reorganized Debtor or their respective affiliates has any liability thereunder.

(b)    Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor or the Reorganized Debtor under any executory or non-executory contract or unexpired or expired lease.

(c)    Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Reorganized Debtor, as applicable, under any executory or non-executory contract or unexpired or expired lease.

(d)     If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under the Plan, the Debtor or Reorganized Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

8.9 *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## SECTION 9. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

9.1 *Conditions Precedent to the Effective Date.*

The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)     The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, the Trustee, and the Supporting Holders, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code;

(b)     The Plan Support Agreement shall not have been terminated, and remains in full force and effect;

(c)     the conditions to effectiveness of the 2024 Bond Documents shall have been satisfied or waived, including but not limited to the delivery of opinions acceptable to the Trustee, and the Refinancing Transaction shall have closed pursuant to the terms of the Plan Support Agreement;

(d)     The Effective Date shall be no earlier than December 2, 2024;

(e)     All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, the 2024 Bond Documents, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws; and

(f)     All requisite governmental authorities and third parties shall have approved or consented, to the extent required, to all actions, documents, certificates, and agreements necessary to implement this Plan.

9.2 *Waiver of Conditions Precedent.*

(a)     Each of the conditions precedent to the occurrence of the Effective Date set forth herein may be waived in writing at any time by the Debtor, the Plan Sponsor, the Trustee, and the Supporting Holders without notice to any other parties in interest or

the Bankruptcy Court and without a hearing.  If any such condition precedent is waived pursuant to this section and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge the Plan in any court.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.3 *Effect of Failure of Conditions.*

If consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any claims by or Claims against the Debtor; (b) prejudice in any manner the rights of the Debtor, any Holders of Claims, or any other Person; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders of Claims, or any other Person in any respect.

## SECTION 10. EFFECT OF CONFIRMATION

### 10.1 *Compromise and Settlement of Claims and Controversies.*

Pursuant to section 1123(a)(f) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise of Claims and controversies relating to the contractual, legal, and subordination rights that a creditor may have with respect to any Allowed Claim or any distribution to be made on account of such Allowed Claim.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of such Claims, and is fair, equitable, and reasonable.

### 10.2 *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind every Holder of a Claim against the Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim of such Holder is Impaired under the Plan and whether such Holder has accepted the Plan.

### 10.3 *Discharge of Claims.*

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the

Confirmation Order, effective as of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Causes of Action of any kind or nature whatsoever against the Debtor or any of its Assets or properties, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed, or retained under this Plan on account of such Claims or Causes of Action. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

### 10.4 *Pre-Confirmation Injunction and Stays.*

Unless otherwise provided in the Plan, all injunctions and stays arising under or entered during the Chapter 11 Case, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the date of entry of the Confirmation Order, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.5 *Subordinated Claims.*

Notwithstanding anything contained herein to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

### 10.6 *Releases by the Debtor.*

**PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER, THE 2024 BOND DOCUMENTS, OR THE PLAN SUPPLEMENT, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS PLAN, AS OF THE EFFECTIVE DATE, EACH RELEASED PARTY WILL BE DEEMED RELEASED AND DISCHARGED BY EACH AND ALL OF THE DEBTOR, THE REORGANIZED DEBTOR, AND THEIR ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND**

**ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTOR, THE REORGANIZED DEBTOR, OR THEIR ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTOR, THE REORGANIZED DEBTOR, OR THEIR ESTATES OR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST THE DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTOR OR THE REORGANIZED DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, THE ORIGINAL BOND DOCUMENTS, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DISCLOSURE STATEMENT, THE REFINANCING TRANSACTION, THIS PLAN, THE 2024 BOND DOCUMENTS, OR ANY OTHER RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE PLAN SUPPORT AGREEMENT, OR THIS PLAN, THE FILING OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE PURSUIT OF CONSUMMATION OF THIS PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THIS PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO A RELEASED PARTY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR CRIMINAL ACTIVITY AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED*, THAT ANY RIGHT TO ENFORCE THIS PLAN AND THE CONFIRMATION ORDER IS NOT SO RELEASED BY THIS SECTION 10.6.**

**THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION, OR APPROVAL OF ANY PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY, OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS,**

29

DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED UNDER THE FOREGOING RELEASE. NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION 10.6 SHALL OR SHALL BE DEEMED TO PROHIBIT THE DEBTOR OR THE REORGANIZED DEBTOR FROM ASSERTING AND ENFORCING ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES THEY MAY HAVE AGAINST ANY PERSON THAT IS BASED UPON AN ALLEGED BREACH OF A CONFIDENTIALITY OR NON-COMPETE OBLIGATION OWED TO THE DEBTOR OR THE REORGANIZED DEBTOR, UNLESS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, UNDER BANKRUPTCY RULE 9019, OF FOREGOING RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE FOREGOING RELEASE IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED; (C) IN THE BEST INTEREST OF THE DEBTOR AND ITS ESTATE; (D) FAIR, EQUITABLE, AND REASONABLE; AND (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

10.7 *Exculpation.*

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATIONS, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, REMEDY, LOSS, AND LIABILITY FOR ANY CLAIM IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASE, THE NEGOTIATION AND PURSUIT OF THE PLAN SUPPORT AGREEMENT, THE REFINANCING TRANSACTION, THIS PLAN, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THIS PLAN, THE FUNDING OR CONSUMMATION OF THIS PLAN, THE OCCURRENCE OF THE EFFECTIVE DATE, THE ADMINISTRATION OF THIS PLAN, THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THIS PLAN, OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING, EXCEPT FOR: (A) THE LIABILITY OF ANY ENTITY THAT WOULD OTHERWISE RESULT FROM THE FAILURE TO PERFORM OR PAY ANY OBLIGATION OR LIABILITY UNDER THIS PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT TO BE ENTERED INTO OR DELIVERED IN CONNECTION WITH THIS PLAN; OR (B) THE LIABILITY OF ANY ENTITY THAT WOULD OTHERWISE RESULT FROM ANY SUCH ACT OR OMISSION TO THE EXTENT THAT SUCH ACT OR OMISSION IS DETERMINED TO HAVE CONSTITUTED FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR A CRIMINAL ACT AS DETERMINED BY A FINAL ORDER.

10.8 *Injunction.*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, INCLUDING BUT NOT LIMITED TO ANY RIGHT ARISING UNDER OR RELATED TO THE 2024 BOND DOCUMENTS, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS ARE, WITH RESPECT TO ANY SUCH CLAIM, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION, OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE, OR OTHER FORUM); (B) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PREJUDGMENT ATTACHMENT), COLLECTING, OR RECOVERING IN ANY MANNER OR BY ANY MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR ENCUMBRANCE OF ANY KIND; (D) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED, OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED).

10.9 *Protection Against Discriminatory Treatment.*

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

10.10 *Preservation of Privilege and Defenses.*

No action taken by the Debtor or Reorganized Debtor in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or Reorganized

Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

### 10.11 *Preservation of Causes of Action and Reservation of Rights.*

Except as otherwise provided in the Plan, including, without limitation, the releases set forth in this Section 10, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of its Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, but not limited to, rights, claims, Causes of Action, rights of setoff, offset, recoupment or other legal or equitable defenses against any Holder of Bond Claims that arise on account of such Holders' objection to or support of an objection to the Plan. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.    **The Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the confirmation of the Plan or the occurrence of the Effective Date**.

### 10.12 *Release of Liens.*

Except as otherwise provided in this Plan, the Confirmation Order, the 2024 Bond Documents, including to the extent the 2024 Bond Documents amend or restate the Original Bond Documents, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 10.13 *Ipso Facto and Similar Provisions Ineffective.*

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to the Debtor shall be void and of no further force or effect with respect to

the Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any entity based on any of the following: (a) the insolvency or financial condition of the Debtor; (b) the commencement of the Chapter 11 Case; (c) the confirmation or consummation of the Plan; or (d) the Refinancing Transaction.

## SECTION 11. RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising out of, or related to, the Chapter 11 Case and this Plan, including, but not limited to, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order;

(d)    resolve any matters related to: (i) the assumption or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, or any other matter related to such Executory Contract; (ii) any potential contractual obligation under any Executory Contract that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(e)    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(f)    to resolve any disputes concerning whether a Person or entity had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, any bar date established in the Chapter 11 Case, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose for determining whether a Claim is discharged hereunder or for any other purpose;

(g)    to recover all Assets of the Debtor and property of the Estate, wherever located;

(h)    adjudicate, decide, or resolve any matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(i)    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(j)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

(k)    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications, and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(l)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(m)    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture, or other agreement or document relating to any of the foregoing;

(n)    adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(o)    consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(p)    hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

(q)    enforce all orders previously entered by the Bankruptcy Court;

(r)    hear any other matter not inconsistent with the Bankruptcy Code; and

(s)    enter a final decree closing the Chapter 11 Case.

Notwithstanding the foregoing, all rights, remedies, and disputes relating to or otherwise associated with the 2024 Bond Documents shall not be subject to the Bankruptcy Court's jurisdiction and shall be governed by the provisions of the 2024 Bond Documents.

34

**SECTION 12. MISCELLANEOUS PROVISIONS**

12.1 *Modification and Amendments.*

(a)     Plan Modifications.   This Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtor with the consent of the Trustee and the Supporting Holders in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, the Debtor or the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan and any Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

(b)     Certain Technical Amendments.   Prior to the Effective Date, the Debtor, with the consent of the Trustee, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; *provided*, that such technical adjustments and modifications do not materially and adversely affect in any respect the treatment of Holders of Claims under the Plan.

(c)     Effect of Confirmation on Modifications.   Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

12.2 *Revocation or Withdrawal of this Plan.*

The Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw this Plan before the Effective Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date does not occur, then:  (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall:  (i) constitute a waiver or release of any Claims; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person.

12.3 *Section 1125(e) Good Faith Compliance.*

As of and subject to the occurrence of the Confirmation Date, the Debtor and its Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

12.4 *Substantial Consummation.*

On the Effective Date, this Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

12.5 *Plan Supplement.*

Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such exhibits or schedules as a Plan Supplement.

12.6 *Further Assurances.*

The Debtor or the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, the Reorganized Debtor, and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

12.7 *Exhibits Incorporated.*

All exhibits to this Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

12.8 *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Person.

12.9 *Entire Agreement.*

On the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

12.10 *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such

holding, alteration, or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.11 *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

### 12.12 *Notices.*

All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

| | |
|---|---|
| Debtor | TARRANT COUNTY SENIOR LIVING CENTER, INC.<br>c/o Jeff Gentry, Executive Vice President & Chief<br>Operating Officer Buckner International<br>700 North Pearl Street, Suite 1200<br>Dallas, Texas 75201 |
| | Attention:   Jeff Gentry<br>              Renee Reimer<br>Email:  jgentry@buckner.org<br>              rreimer@buckner.org |
| With a<br>simultaneous<br>copies to | Butler Snow LLP<br>2911 Turtle Creek Blvd., Suite 1400<br>Dallas, TX 75219 |
| | Attention: Martin A. Sosland<br>              Candice M. Carson<br>E-mail: martin.sosland@butlersnow.com<br>              candice.carson@butlersnow.com |
| | -and- |
| | Butler Snow LLP<br>6075 Poplar Avenue, Suite 500,<br>Memphis, TN 38119<br>Tel: (901) 680-7200<br>Fax: (901) 680-7201 |
| | Attention: Adam M. Langley |

Kenneth Groce
E-mail: adam.langley@butlersnow.com
kenneth.groce@butlersnow.com
-and-

Butler Snow LLP
1819 Fifth Avenue North, Suite 1000
Birmingham AL 35203
Tel: (205) 297-2200
Fax: (205) 297-2201

Attention: Xan Flowers
E-mail: xan.flowers@butlersnow.com

All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Chapter 11 Case.  Any such Holder of a Claim may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

12.13 *Reservation of Rights.*

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred. None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims before the Effective Date.

Dated:  August 30, 2024                    Respectfully submitted,

                                            TARRANT COUNTY SENIOR LIVING
                                            CENTER, INC.

                                            By:  */s/ Jeff Gentry*
                                                 Name: Jeff Gentry
                                                 Title: Director, Senior Vice President,
                                                 and Chief Financial Officer

88023616.v4

38