

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 12, 2024**

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **TARRANT COUNTY SENIOR LIVING** | § | |
| **CENTER, INC.**[1] | § | **CASE NO. 24-80068-swe11** |
| | § | |
| **Debtor.** | § | |

### FINDINGS OF FACT, CONCLUSIONS OF
### LAW, AND ORDER (I) APPROVING THE DEBTOR'S
### SOLICITATION PROCEDURES AND DISCLOSURE STATEMENT;
### AND (II) CONFIRMING THE DEBTOR'S PREPACKAGED PLAN OF
### REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

WHEREAS, Tarrant County Senior Living Center, Inc., as debtor and debtor-in-possession in the above-captioned case (the "***Debtor***"), having proposed and filed with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "***Bankruptcy Court***") (i) the *Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of August 30, 2024 [Docket No. 15] (as further modified, amended, and/or

---

[1] The last four digits of the Debtor's federal tax identification number are 8602.

supplemented from time to time, including as modified herein, the "**Plan**"), a copy of which is annexed hereto as **Exhibit A**; and (ii) that certain related *Disclosure Statement for Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of August 30, 2024 [Docket No. 14] (the "**Disclosure Statement**")[2]; and

WHEREAS, on August 30, 2024, the Debtor caused its solicitation, claims, and voting agent, Kroll Restructuring Administration LLC ("**Kroll**"), to distribute packages containing the Disclosure Statement,[3] ballots with voting instructions, and a cover letter (the "**Solicitation Package**") to the Holders of Bond Claims as of the Voting Record Date, as the only Holders of Claims entitled to vote to accept or reject the Plan with a voting deadline of 5:00 p.m., prevailing Central Time, on September 27, 2024(the "**Voting Deadline**"); and

WHEREAS, as reflected in the *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 31] (the "**Voting Certification**"), of the Holders of Bond Claims that voted, 94.69% in number and 99.87% in dollar amount voted in favor of the Plan; and

WHEREAS, on October 1, 2024 (the "**Petition Date**"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"); and

WHEREAS, on the Petition Date, the Debtor filed, among other documents, the (i) Plan; (ii) Disclosure Statement; (iii) *Emergency Motion of the Debtor for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation*

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement.

[3] Attached to the Disclosure Statement as exhibits are the Plan, Plan Support Agreement, 2024 Bond Documents, and Financial Projections.

*of Prepackaged Plan of Reorganization; (II) Fixing Related Objection Deadlines and Approving Notice Procedures; (III) Approving Prepetition Solicitation Procedures; (IV) Conditionally Directing the United States Trustee Not To Convene Section 341 Meeting of Creditors; and (V) Granting Related Relief* [Docket No. 13], requesting approval of, among other things, the Debtor's prepetition solicitation procedures described therein (the "***Solicitation Procedures***") with respect to the Plan, including the form of ballots used to solicit votes accepting or rejecting the Plan (the "***Ballots***"); (iv) Voting Certification, detailing, among other things, the results of the Plan voting process; and (v) *Amended Declaration of Jeff Gentry in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 34] (the "***First Day Declaration***") describing, among other things, the reasons for and objectives of this Chapter 11 Case; and

WHEREAS, on October 3, 2024, the Bankruptcy Court entered the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan of Reorganization; (II) Fixing Related Objection Deadlines and Approving Notice Procedures; and (III) Approving Prepetition Solicitation Procedures; (IV) Conditionally Directing the United States Trustee Not to Convene  Section 341 Meeting of Creditors; and (V) Granting Related Relief* [Docket No. 70] (the "***Combined Hearing Order***"), which, among other things, set the date and time for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan (the "***Confirmation Hearing***"), established the deadline for filing objections to the Plan and the Disclosure Statement (the "***Objection Deadline***"), and approved the (i) *Notice of (A) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (B) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Chapter 11 Plan and Related Matters, (C) Objection Deadlines, and Summary of the Debtor's Prepackaged Chapter 11 Plan* (the "***Notice of Commencement***"); (ii) *Notice of (A) Commencement of Prepackaged*

3

*Chapter 11 Bankruptcy Case, (B) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Chapter 11 Plan and Related Matters, (C) Objection Deadlines, and Summary of the Debtor's Prepackaged Chapter 11 Plan and (D) Non-Voting Status to Holders of Claims and Interests Deemed to Accept the Plan* (the "***Notice of Non-Voting Status***" and, together with the Notice of Commencement, the "***Combined Hearing Notices***"); (iii) form of Ballots; and (iv) *Notice of (A) Commencement of Prepackaged Chapter 11 Case, (B) Combined Hearing on the Disclosure Statement and Confirmation of Plan and (C) Deadline for Objecting to Confirmation* (the "***Publication Notice***"); and

WHEREAS, on October 3, 2024, and October 7, 2024, respectively, a *Notice of Hearing for November 12, 2024* [Docket No. 71] (the "***Notice of Hearing***") and an *Amended Notice of Hearing for November 12, 2024 Setting* (the "***Amended Notice of Hearing***") [Docket No. 91] were filed to supplement the Combined Hearings Notices and add that the Confirmation Hearing would be a hybrid hearing; and

WHEREAS, on October 3, 2024, the Debtor, through Kroll, caused the Notice of Hearing to be served, as evidenced by *Affidavit of Service* [Docket No. 101];

WHEREAS, on October 4, 2024, the Debtor, through Kroll, caused the Combined Hearing Notices and the Notice of Hearing to be served, as evidenced by *Affidavit of Service* [Docket No. 103]; and

WHEREAS, on October 7, 2024, October 8, 2024, and October 11, 2024, the Debtor caused the Amended Notice of Hearing to be served and the Publication Notice to be published in the *Fort Worth Star-Telegram*, as evidenced by the *Affidavit of Service* [Docket No. 108] and *Certificate of Publication* [Docket No. 112] (collectively, the "***Combined Notice Affidavits***"), respectively; and

4

WHEREAS, on October 28, 2024, the Debtor filed the *Declaration of Jeff Gentry in Support of (I) Approval of the Debtor's Solicitation Procedures and Disclosure Statement and (II) Confirmation of the Debtor's First Amended Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, [Docket No. 118] (the "***Gentry Declaration***"), and *Debtor's Memorandum of Law in Support of (I) Approval of Disclosure Statement and (II) Confirmation of the Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 117] (the "***Memorandum of Law***") in support of approval of the Disclosure Statement and confirmation of the Plan; and

WHEREAS, due notice of the Confirmation Hearing has been given to Holders of Claims against the Debtor and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***Local Rules***"), and the Combined Hearing Order as evidenced by the Combined Notice Affidavits and such notice is sufficient under the circumstances and no further notice is required; and

WHEREAS, the Bankruptcy Court having held the Confirmation Hearing on November 12, 2024, to consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, and having noted that there were no objections to the Disclosure Statement or Plan; and

NOW, THEREFORE, based upon the Bankruptcy Court's consideration of the entire record of this Chapter 11 Case and the Confirmation Hearing, including the (i) Disclosure Statement, Plan, and Voting Certification, (ii) Debtor's Memorandum of Law, (iii) Gentry Declaration, and (iv) Combined Notice Affidavits; and no objections to the Plan or Disclosure Statement having been filed or asserted; and upon the arguments of counsel and the evidence

adduced at the Confirmation Hearing; and the Bankruptcy Court having found that the Disclosure

Statement should be approved and the Plan should be confirmed as reflected by the Bankruptcy

Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and

sufficient cause appearing therefor, the Bankruptcy Court hereby **FINDS, DETERMINES, AND**

**CONCLUDES** that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on

the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and

conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable

herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact

constitute conclusions of law, they are adopted as such.  To the extent any of the following

conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.  The

Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157

and 1334.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings

pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court has jurisdiction to enter a final order

with respect thereto.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408

and 1409.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  The Debtor

is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

C.      <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of (and deems admitted

into evidence for purposes of Confirmation of the Plan) the docket of this Chapter 11 Case

maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including,

without limitation, all pleadings and other documents filed, all orders entered, and all evidence and

arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of this Chapter 11 Case.

D.    <u>Burden of Proof</u>.  The Debtor, as proponent of the Plan, has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Debtor has met its burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E.    <u>Chapter 11 Petition</u>.  On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  The Debtor continued to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No statutory committee, trustee, or examiner has been appointed in this Chapter 11 Case.

F.    <u>Notice</u>.  As evidenced by the Combined Notice Affidavits and Voting Certification, due, timely, proper, and adequate notice of the Plan, Disclosure Statement, and the Confirmation Hearing, together with the Voting Deadline and Objection Deadline, has been provided to: (i) the Office of the United States Trustee for the Northern District of Texas (the "***United States Trustee***"), (ii) the Debtor's thirty (30) largest unsecured creditors as of the Petition Date, (iii) counsel to the Trustee, (iv) those persons who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002; (v) the Internal Revenue Service; (vi) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; and (vii) all parties in interest listed on the Debtor's creditor matrix.  Further, the Publication Notice was published in the *Fort Worth Star-Telegram* on October 11, 2024, in accordance with the Combined Hearing Order and Bankruptcy Rule 2002(l).  Such notice was adequate and sufficient based upon the facts and circumstances of this Chapter 11 Case and pursuant to section

7

1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**Disclosure Statement, Solicitation, and Modifications to the Plan**

G.    <u>Disclosure Statement</u>.  The Disclosure Statement contains (i) sufficient information of a kind consistent with the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act (to the extent applicable), and (ii) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein, and is approved in all respects.  The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

H.    <u>Solicitation</u>.  Prior to commencing this Chapter 11 Case, the Debtor caused the Solicitation Package to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and all other applicable provisions in the Bankruptcy Code, and all other applicable rules, law, and regulations applicable to such solicitation.  The form of ballots ("***Ballots***") used to solicit votes to accept or reject the Plan from Holders of Bond Claims in Class 3, which are the only Holders of Claims entitled to vote to accept or reject the Plan (the "***Voting Class***"), adequately addressed the particular needs of this Chapter 11 Case and were appropriate for Holders in the Voting Class to accept or reject the Plan.

I.    As set forth in the Voting Certification, on August 30, 2024, the Solicitation Package was transmitted to and served on the Holders in the Voting Class.  The instructions on the Ballots advised the Voting Class that for the Ballots to be counted, the Ballots must be properly executed, completed, and delivered to Kroll so as to be actually received no later than the Voting Deadline.  The period during which the Debtor solicited Holders of Bond Claims in the Voting

Class was a reasonable period of time for such Holders to make an informed decision to accept or reject the Plan.

J. Pursuant to section 1126(f) of the Bankruptcy Code, the Debtor was not required to solicit votes from the Holders of Class 1—Priority Non-Tax Claims, Class 2—Other Secured Claims, Class 4—General Unsecured Claims, or Class 5— Subordinated Note Claims (collectively, the "***Deemed Accepting Classes***") as each such Class is Unimpaired and conclusively presumed to have accepted the Plan.

K. <u>No Other or Further Notice or Solicitation Required</u>. As evidenced by the Voting Certification and Combined Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the Objection Deadline) have been given due, proper, timely, and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had sufficient opportunity to appear and be heard with respect thereto. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of this Chapter 11 Case, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. No other or further notice or re-solicitation is required.

L. <u>Good Faith Solicitation</u>. Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor and its successors, predecessors, partners, representatives, control persons, members, officers, directors, employees, agents and their respective attorneys and other advisors (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules,

the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of votes on the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan and, therefore, are not, and on account of any such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in section 10.7 of the Plan.

M.    <u>Voting</u>.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement, and applicable non-bankruptcy law.  Class 3 has voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.  Based on the foregoing, and as evidenced by the Voting Certifications, at least one Impaired Class of Claims has voted to accept the Plan in accordance with the requirements of sections 1224 and 1126 of the Bankruptcy Code.

<u>**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**</u>

N.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016, the Plan is dated, identifies the Debtor as the plan proponent, and clearly identifies the injunction proposed under the Plan, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

i.      <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.    With the exception of

Administrative Expense Claims, Fee Claims, and Priority Tax Claims which need not be classified,

section 3 of the Plan classifies the Classes of Claims against the Debtor.    The Claims placed in

each Class are substantially similar to the other Claims in each such Class.    Valid business, factual,

and legal reasons exist for separately classifying the various Classes of Claims created under the

Plan, and the Plan does not unfairly discriminate between Holders of Claims in each Class or

between Classes.    Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy

Code.

ii.      <u>Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2))</u>.    Sections 3 and 4 of the

Plan specifies which Classes of Claims are Unimpaired under the Plan within the meaning of

section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy

Code.

iii.      <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.    Sections 3 and

4 of the Plan specify which Class of Claims is Impaired under the Plan within the meaning of

section 1124 of the Bankruptcy Code and clearly specify the treatment of the Claims that Class,

thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

iv.      <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.    The Plan provides for the same

treatment for each Claim in each respective Class unless the Holder of a particular Claim has

agreed to less favorable treatment for such Claim, thereby satisfying section 1123(a)(4) of the

Bankruptcy Code.

v.      <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.    The Plan provides adequate

and proper means for the implementation of the Plan, including, without limitation, (a) the

execution and delivery of appropriate agreements or other documents containing terms that are

consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate documents with the appropriate governmental authorities under applicable law; and (d) all other actions that the Debtor or the Reorganized Debtor, as applicable, determines are necessary or appropriate to implement the Refinancing Transaction.

vi.    <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>.  The Plan does not provide for the issuance of nonvoting equity securities, therefore section 1123(a)(6) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

vii.    <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  As of the Effective Date, the members of the board of directors and officers of the Debtor as of the Petition Date shall remain in their current capacities as director and officers of the Reorganized Debtor, in each case subject to the ordinary rights and powers of the board of directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to this Plan.  From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

viii.    <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>.  Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable to this Chapter 11 Case.

ix.    <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C.
§ 1123(b)(1))</u>.  As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to sections
3 and 4 of the Plan, Claims in the Voting Class are Impaired and Claims in the Deemed Accepting
Classes are Unimpaired.

x.    <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Section 8 of the Plan governs
the assumption of Executory Contracts and unexpired leases pursuant to sections 363 and 365 of
the Bankruptcy Code, as applicable, thereby satisfying section 1123(b)(2) of the Bankruptcy Code.

xi.    <u>Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3))</u>. Section 10.11
of the Plan provides for the retention of Causes of Action not expressly settled or released under
the Plan.  Thus, the Plan satisfies the requirements of section 1123(b)(3) of the Bankruptcy Code.

xii.    <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>.  As permitted by section
1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims in the Voting
Class.  The Plan leaves unaffected the rights of Holders of Claims in the Deemed Accepting
Classes.

xiii.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  As permitted by section
1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent
with the applicable provisions of the Bankruptcy Code, including, without limitation, certain
release, exculpation, and injunction provisions in section 10 of the Plan.  Based upon the facts and
circumstances of this Chapter 11 Case, the release, exculpation, and injunction provisions in the
Plan are integral and critical parts of the Plan, and the Released Parties and Exculpated Parties
have relied on the efficacy and conclusive effects of such releases and injunctions when making
concessions and exchanging consideration in connection with this Chapter 11 Case and the Plan.
Such release, exculpation, and injunction provisions in section 10 of the Plan are: (i) in exchange

for the good, valuable, and reasonably equivalent consideration provided by the Released Parties; (ii) in the best interests of the Debtor, its Estate, and its Creditors; (iii) fair, equitable, and reasonable; and (iv) a bar to the Debtor or the Reorganized Debtor asserting any Claims or Causes of Action released pursuant to the Plan. Accordingly, based upon the record of this Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in section 10 of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

xiv.    <u>Sale of Exempt Property (11 U.S.C. § 1123(c))</u>. The Debtor is not an individual. Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

xv.    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. Except as otherwise provided in the Plan, each of the Executory Contracts of the Debtor, including the Residency Agreements, shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

O.    <u>The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtor, as the plan proponent, has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Combined Hearing Order, and other applicable law in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

P.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtor has proposed the Plan, including all documents necessary to effectuate the Plan, and the transactions

contemplated by the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Debtor's Chapter 11 Case was filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtor to implement the Refinancing Transaction, reorganize, and successfully emerge from chapter 11. The Plan (including all documents necessary to effectuate the Plan), the Plan Support Agreement, and the 2024 Bond Documents were negotiated in good faith and at arm's length among the Debtor, Buckner, the Trustee, and the Supporting Holders. Additionally, the Refinancing Transaction embodied in the Plan, reflects the best possible compromise that could be reached given the facts and circumstances surrounding the Debtor and this Chapter 11 Case. Further, the Plan's classification, exculpation, release, and injunction provisions are consistent with sections 105, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable case law in the Fifth Circuit, have been negotiated in good faith and at arms' length, are integral to the Plan, and supported by valuable consideration.

Q.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).     Any payments made or promised by the Debtor for services or for costs and expenses incurred in connection with this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

R.     Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5)).     The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity of the Debtor's board of directors have been fully disclosed in the First Day Declaration and at the Confirmation Hearing.

S.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Plan does not provide for any rate

changes over which a governmental regulatory commission has jurisdiction.  Accordingly, section

1129(a)(6) of the Bankruptcy Code is not applicable to this Chapter 11 Case.

T.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  Each Holder of an Impaired

Claim (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Claim

property of a value, as of the Effective Date, that is not less than the amount that such Holder

would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on

the Effective Date, or (iii) has agreed to receive less favorable treatment.  Therefore, the Plan

satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

U.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  As evidenced by the

Voting Certification, Class 3 (Bond Claims) voted to accept the Plan in accordance with sections

1126(b) and (c) of the Bankruptcy Code, and such Class does not include insiders of the Debtor

(as that term is defined in section 101(31) of the Bankruptcy Code).  All other Classes of Claims

are Unimpaired and conclusively deemed to have accepted to Plan pursuant to section 1126(f).

V.      Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C.

§ 1129(a)(9)).  The treatment of Claims under the Plan of the type specified in section 507(a)(1)

through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section

1129(a)(9) of the Bankruptcy Code.

W.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  As evidenced by the

Voting Certification, section 1129(a)(10) of the Bankruptcy Code is satisfied as the Voting Class

has accepted the Plan, determined without including any acceptances of the Plan by any insider.

X.      Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure Statement,

the Gentry Declaration, and the evidence proffered or adduced at or prior to the Confirmation

Hearing (i) is reasonable, persuasive, and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect that the Debtor will be able to meet its financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  As provided in section 2.4 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.  Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, by the Debtor in accordance with the applicable schedule for payment of such fees.

Z.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtor has no obligations for retiree benefits as that term is defined in section 1114 of the Bankruptcy Code, thus the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable.

AA.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

BB.     Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15)).  The Debtor is not an individual.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

CC.    <u>Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. There are no transfers of property contemplated under the Plan. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

DD.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. No Class of Claims has voted to reject the Plan or is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(b) of the Bankruptcy Code is inapplicable in this Chapter 11 Case

EE.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan being confirmed in this Chapter 11 Case. Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

FF.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    <u>Exemption from Transfer Tax (11 U.S.C. § 1146(a))</u>. All transactions contemplated by the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

HH.    <u>Satisfaction of Conditions Precedent to the Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in section 9.1 of the Plan, has been or is reasonably likely to be satisfied in accordance with section 9.1 of the Plan.

II.      <u>Implementation</u>.  All documents and agreements necessary to implement the Plan have been negotiated in good faith and at arm's length and are in the best interests of the Debtor, and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not in conflict with any federal or state law.

JJ.      <u>Injunction, Exculpation, and Releases</u>.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Section 10 of the Plan and this Confirmation Order.  Section 105(a) of the Bankruptcy Code permits issuance of injunction and approval of the releases and exculpations set forth in Section 10 of the Plan and this Confirmation Order, if, as has been established here based upon the record in this Chapter 11 Case and the evidence presented in the Gentry Declaration and the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtor's Estate, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtor, its Estate, and parties in interest.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Plan are fair, equitable, reasonable, and in the best interests of the Debtor, its Estate and Creditors.  The Gentry Declaration and the record of the Confirmation Hearing and this Chapter 11 Case are sufficient to support the releases, exculpation, and injunction provided for in section 10 of the Plan.  Accordingly, based upon the record of this Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Gentry Declaration and the Confirmation Hearing, the Bankruptcy Court finds

that the injunction, exculpation, and releases set forth in section 10 of the Plan are consistent with

the Bankruptcy Code and applicable law.  The failure to implement the injunction, release, and

exculpation provisions of the Plan would seriously impair the Debtor's ability to confirm the Plan.

KK.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan

satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## <u>ORDER</u>

ACCORDINGLY,  IT  IS  HEREBY  ORDERED,  ADJUDGED,  DECREED,  AND

DETERMINED THAT:

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact

and conclusions of law are hereby incorporated by reference as though more fully set forth herein.

2.    <u>Notice of the Confirmation Hearing</u>.  Notice of the Confirmation Hearing complied

with the terms of the Combined Hearing Order, was appropriate and satisfactory based upon the

circumstances  of  this  Chapter  11  Case  and  was  in  compliance  with  the  provisions  of  the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.    <u>Adequacy of Disclosure Statement</u>.    The  Disclosure  Statement  (i) contains

adequate information of a kind that is consistent with the disclosure requirements of applicable

nonbankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such

term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with

respect to the Debtor, the Plan, and the transactions contemplated therein, and (iii) is approved in

all respects.

4.    <u>Solicitation and Tabulation</u>.  The solicitation and tabulation of votes on the Plan

complied  with  the  Solicitation  Procedures,  was  appropriate  and  satisfactory  based  upon  the

circumstances  of  this  Chapter  11  Case  and  was  in  compliance  with  the  provisions  of  the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.  The

offering, issuance, and distribution of Series 2024 Bonds issued under the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act under section 3(a)(2) and 3(a)(4) of the Securities Act of 1933, as amended and under section 1145(a)(1) of the Bankruptcy Code.  Any and all Series 2024 Bonds issued under the Plan will be freely tradable under the Securities Act by the recipients thereof.  To the extent that the Debtor's solicitation was deemed to constitute an offer of new securities, such solicitation was exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act.  Specifically, section 4(a)(2) and Regulation D of the Securities Act create an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering."  15 U.S.C. § 77d(a)(2).  The Debtor has complied with the requirements of section 4(a)(2) and Regulation D of the Securities Act as the prepetition solicitation of acceptances was made in a manner that would not constitute a public offering.  The solicitation was made only to holders of Class 3—Bond Claims, and such holders were understood to be sophisticated investors as of the Voting Record Date.  *See* Regulation D, 17 C.F.R.

5.    <u>Confirmation of the Plan</u>.  The Plan and each of its provisions and exhibits shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety.

6.     <u>Plan Implementation</u>.  In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction, no further action by the Bankruptcy Court or the member, managers, officers, or directors of the Debtor or Reorganized Debtor is required for the Debtor or Reorganized Debtor to, as of the Effective Date: (i) take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, the Refinancing Transaction, the 2024 Bond Documents, this Confirmation Order, and the transactions contemplated thereby or hereby, including the transactions identified in section 5 of the Plan, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan and the Refinancing Transaction, including those contracts, instruments, releases, agreements, and documents identified in section 5 of the Plan.

7.     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan including (i) the assumption of Executory Contracts; (ii) the execution of and entry into the 2024 Bond Documents; (iii) the issuance and distribution of the Series 2024 Bonds as provided in the Plan; and (iv  all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan, shall be effective on the Effective Date pursuant to this Confirmation Order, without further notice, application to or order of this Court, or further action by the respective managers, officers, directors or members of the Debtor or Reorganized Debtor.

8.     To the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the members, managers, or directors of the Debtor or Reorganized Debtor, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been

taken by unanimous action of the directors, managers, and members of the Debtor or Reorganized Debtor, as applicable.

9.     <u>Administrative Expense Claims</u>.   All Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor during these Chapter 11 Cases shall be paid by the Debtor or Reorganized Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing such liabilities.

10.    <u>Accrued Fee Claims</u>.   All Professionals seeking payment of accrued Fee Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in this Chapter 11 Case by the date that is forty-five (45) days after the Confirmation Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court as soon as reasonably practicable after the date that such Claim is Allowed by order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Fee Claim and the Debtor.   **Any accrued Fee Claim that is not asserted in accordance herewith and with section 2.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of its Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim**.

11.    <u>Priority Tax Claims</u>.   Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim,

payment in full in Cash of the Allowed amount of the Priority Tax Claim on the later of the

Effective Date or as soon as practicable after the date when such Claim becomes an Allowed

Claim; *provided*, *that* Allowed Priority Tax Claims representing liabilities incurred in the ordinary

course of business by the Debtor, as Debtor in Possession, shall be paid by the Debtor or the

Reorganized Debtor, as applicable, in the ordinary course of business, consistent with past practice

and in accordance with the terms and subject to the conditions of any orders or agreements

governing, instruments evidencing, or other documents establishing, such liabilities.

12.    <u>Payment of Statutory Fees</u>.  The Debtor and the Reorganized Debtor, as applicable,

will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interest

payable to the United States Trustee, for each quarter (including any fraction thereof) until this

Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  The Debtor shall also

comply with its obligations to file quarterly operating reports as required by the United States

Trustee.

13.    <u>Continued Corporate Existence</u>.  The Debtor shall continue to exist as of the

Effective Date as a separate corporate entity, with all the powers of a corporation under the

applicable law in the jurisdiction where the Debtor is incorporated or formed and under the

certificate of incorporation and bylaws (or other formation documents) in effect prior to the

Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation

documents) are amended by the Plan or otherwise, and to the extent such documents are amended,

such documents are deemed to be under the Plan and require no further action or approval.

14.    <u>Vesting of Assets in the Reorganized Debtor</u>.  Except as otherwise provided in the

Plan or any agreement, instrument, or other document incorporated therein, including the Liens

and security interests granted under the Original Bond Documents as such Liens and security

interests continue to secure the obligations related to the 2024 Bond Documents, on the Effective

Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor

under the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges,

or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan,

the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and

compromise or settle any Claims, Interests, or Causes of Action without supervision or approval

by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy

Rules.

15.    <u>Cancellation of Agreements, Security Interests, and Other Interests</u>.    On the

Effective Date, except to the extent otherwise specifically provided in the Plan or this Confirmation

Order, including to the extent certain of the Original Bond Documents continue in existence

pursuant to their amendment and restatement pursuant to the 2024 Bond Documents, all notes,

instruments, certificates, and other documents evidencing the Bonds, shall be cancelled and the

obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto

(including, without limitation, any guarantee obligations of any non-Debtor Affiliates with respect

to the Bond Claims) shall be discharged and the agents and Trustee thereunder shall be

automatically and fully discharged from all duties and obligations thereunder.  Except to the extent

certain security interests and Liens continue in existence pursuant to the amendment and

restatement of the Original Bond Documents pursuant to the 2024 Bond Documents, all existing

security interests and/or Liens and/or any other Secured Claims shall also be automatically

released, discharged, terminated, and of no further force and effect as of the Effective Date.

Notwithstanding the foregoing, following confirmation of the Plan or the occurrence of the

Effective Date, to the extent that the Original Bond Documents do not otherwise remain in effect

pursuant to the 2024 Bond Documents, any credit document or agreement that governs the rights

of any Holder of a Bond Claim shall continue in effect for purposes of (i) allowing Holders of such

Allowed Claims to receive distributions under the Plan; (ii) allowing and preserving the rights of

the agents or representative of Holders of such Claims to make distributions on account of such

Allowed Claims, as provided herein; (iii) preserving all exculpations in favor of the Trustee;

(iv) allowing the Trustee to enforce any rights and obligations owed to it under the Plan or the

Confirmation Order; (v) allowing the Trustee to enforce its charging lien for fees and expenses under the

Original Bond Documents; and (vi) permitting the Trustee to appear and be heard in this Chapter 11

Case, or in any proceeding in the Bankruptcy Court or any other court.

16.    <u>Exemption from Registration Requirements; Trading of Securities</u>.  The offering,

issuance, and distribution of Series 2024 Bonds issued under the Plan shall be exempt from, among

other things, the registration requirements of section 5 of the Securities Act under section 3(a)(2)

and 3(a)(4) of the Securities Act of 1933, as amended and under section 1145(a)(1) of the

Bankruptcy Code.  Any and all Series 2024 Bonds issued under the Plan will be freely tradable

under the Securities Act by the recipients thereof.

17.    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy

Code, any transfer from the Debtor to the Reorganized Debtor or to any entity under, in

contemplation of, or in connection with the Plan, including: (i) the issuance, distribution, transfer,

or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor;

(ii) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other

security interest, or the securing of additional indebtedness by such or other means; (iii) the

making, assignment, or recording of any lease or sublease; (iv) any assumption, assignment, or

sale by the Debtor of its interests in unexpired leases of nonresidential real property or executory

contracts pursuant to section 365(a) of the Bankruptcy Code, (v) the grant of collateral under the

Amended Master Indenture; (vi) the issuance, renewal, modification, or securing of indebtedness

by such means, and the making, delivery, or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale,

assignments, or other instrument of transfer executed in connection with any transaction arising

out of, contemplated by, or in any way related to the Plan, shall not be subject to any document

recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate

transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory

filing or recording fee, or other similar tax or governmental assessment, and upon entry of this

Confirmation Order, the appropriate state or local governmental officials or agents shall forego the

collection of any such tax or governmental assessment and to accept for filing and recordation any

of the foregoing instruments or other documents without the payment of any such tax or

governmental assessment.

18.    <u>Organizational Documents</u>.    Subject to section 5.1 of the Plan, the Reorganized

Debtor is authorized to enter into such agreements and amend its corporate governance documents

to the extent necessary to implement the terms and provisions of the Plan.    Notwithstanding

anything to the contrary in this Confirmation Order or section 5 of the Plan, after the Effective

Date, any disputes arising under the new organizational documents will be governed by the choice

of law and jurisdictional provisions therein.

19.    <u>Board and Officers of the Reorganized Debtor</u>.    As of the Effective Date, the

members of the board of directors and officers of the Debtor as of the Petition Date shall remain

in their current capacities as director and officers of the Reorganized Debtor, in each case subject

to the ordinary rights and powers of the board of directors to remove or replace the officers in

accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to the Plan. From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation.

      20.   <u>Directors and Officers Insurance Policies</u>. All Insurance Policies to which the Debtor is a party as of the Effective Date, including the D&O Policy, shall be deemed to be and treated as Executory Contracts and shall be deemed to be assumed by the Debtor pursuant to section 365 of the Bankruptcy Code and shall continue in full force and effect thereafter in accordance with their respective terms. All Insurance Policies shall vest in the Reorganized Debtor. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy. In addition, after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in such policies. Nothing in the Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the Insurance Policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtor shall retain all rights and defenses under such Insurance Policies. The Insurance Policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date.

21.     <u>Preservation of Causes of Action</u>.  In accordance with section 1123(b) of the Bankruptcy Code but subject to the releases set forth in section 10 of the Plan, all Causes of Action that the Debtor may hold against any entity shall vest in the Reorganized Debtor on the Effective Date.  Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Subject to the releases set forth in section 10 of the Plan, no entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action.  The Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in the Plan or this Confirmation Order, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the confirmation of the Plan or the occurrence of the Effective Date.

22.     <u>Corporate Action</u>.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other entity, including: (i) assumption of Executory Contracts; (ii) the execution of and entry into the 2024 Bond Documents; (iii) the issuance and distribution of the Series 2024 Bonds; and (iv) all other acts or actions contemplated

or reasonably necessary or appropriate to promptly consummate the transactions contemplated by
the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the
Plan involving the company structure of the Reorganized Debtor and any company action required
by the Debtor or Reorganized Debtor, as applicable, in connection therewith shall be deemed to
have occurred on and shall be in effect as of the Effective Date without any requirement of further
action by the member, directors, managers, authorized persons, or officers of the Debtor or
Reorganized Debtor, as applicable.

23.    On or prior to the Effective Date, the appropriate officers, directors, managers, or
authorized persons of the Debtor or Reorganized Debtor (including any president, vice-president,
chief executive officer, treasurer, general counsel, or chief financial officer thereof), as applicable,
shall be authorized and directed to issue, execute, deliver, file, or record such contracts, securities,
instruments, releases, securities, certificates of incorporation, certificates of formation, bylaws,
operating agreements, instruments, documents, and other agreements contemplated by the Plan (or
necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on
behalf of the Debtor or the Reorganized Debtor, as applicable, including (i) the 2024 Bond
Documents, (ii) the Series 2024 Bonds, and (iii) any and all other agreements, documents,
securities, and instruments relating to the foregoing.  The authorizations and approvals
contemplated by the Plan shall be effective notwithstanding any requirements under non-
bankruptcy law.  All counterparties to any documents described in this paragraph are authorized
to and may execute any such documents as may be required or provided by such documents.

24.    Effectuating Documents; Further Transactions.  Prior to, on, and after the Effective
Date, the Debtor and Reorganized Debtor and the directors, managers, officers, authorized persons,
and members of the boards of directors or managers and directors thereof, are authorized to and

may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, ,
certificates of incorporation, certificates of formation, bylaws, operating agreements, instruments,
and other agreements or documents and take such actions as may be necessary or appropriate to
effectuate, implement, and further evidence the terms and provisions of the Plan and the 2024
Bond Documents, without the need for any approvals, authorizations, actions, or consents except
for those expressly required under the Plan.  All counterparties to any documents described in this
paragraph are authorized to and may execute any such documents as may be required or provided
by such documents without further order of the Bankruptcy Court.

      25.    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  Except as otherwise
provided in the Plan, each of the Executory Contracts of the Debtor, including the Residency
Agreements, shall be deemed assumed as of the Effective Date, without the need for any further
notice to or action, order, or approval of the Bankruptcy Court, pursuant to section 365 of the
Bankruptcy Code.  The Confirmation Order may constitute an order of the Bankruptcy Court
approving the assumption of each of the Executory Contracts and unexpired leases, all pursuant to
sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective
Date.  Except as otherwise provided in the Plan or agreed to by the Debtor and the applicable
counterparty, each Executory Contract and unexpired lease shall include any and all modifications,
amendments, supplements, restatements, or other agreements made directly or indirectly by any
agreement, instrument, or other document that in any manner affects such Executory Contract or
unexpired lease.

      26.    Assumption of any Executory Contract or unexpired lease pursuant to the Plan or
otherwise shall result in the full release and satisfaction of any Claims or defaults, whether
monetary or nonmonetary, including defaults of provisions restricting the change in control or

ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or unexpired lease at any time before the effective date of the assumption.

27.     Nothing contained in the Plan shall constitute an admission by the Debtor or the Reorganized Debtor that any such contract or lease is in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder.

28.     In the event that the Effective Date does not occur, the Bankruptcy Court retains jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

29.     Indemnification.  On and as of the Effective Date, any obligations of the Debtor pursuant to its corporate charter, by-laws, limited liability company agreement, memorandum and article of association, or other organizational documents to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtor or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtor shall not be discharged, impaired, or otherwise affected by the Plan; *provided*, that the Reorganized Debtor shall not indemnify officers, directors, members, or managers, as applicable, of the Debtor for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.  All such obligations shall be deemed and treated as Executory Contracts and will be assumed and irrevocable and will survive the effectiveness of the Plan and shall continue as obligations of the Reorganized Debtor. Any claim based on the Debtor's obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be required to

indemnify the Debtor's managers, directors, officers, or employees for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtor's organizational documents, or applicable agreements governing the Debtor's indemnification obligations.

30. _Conditions to Effective Date_. The Plan shall not become effective unless and until the conditions set forth in section 9.1 of the Plan have been satisfied or waived pursuant to section 9.2 of the Plan. In the event that one or more of the conditions specified in section 9.1 of the Plan have not been satisfied or waived in accordance with section 9.2 of the Plan, (i) this Confirmation Order shall be vacated, (ii) the Plan shall be null and void in all respects, and (iii) nothing contained in the Plan or the Disclosure Statement shall: (A) constitute a waiver or release of any claims by or Claims against the Debtor; (B) prejudice in any manner the rights of the Debtor, any Holders of Claims, or any other Person; or (C) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims, or any other Person in any respect.

31. _Compromise and Settlement of Claims and Controversies_. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtor, its Estate, and any Holders of Claims and is fair, equitable and reasonable. Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims in each Class

in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.   As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; *provided*, however, that nothing contained herein shall preclude any Person or entity from exercising their rights under and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan.   Notwithstanding the foregoing, any subordinated debt expressly provided for in the Plan or the 2024 Bond Documents shall remain subordinated to the extent provided for in such documents.

32.      <u>Releases by the Debtor</u>.   Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and except as otherwise specifically provided in the Plan, this Confirmation Order, the 2024 Bond Documents, or the Plan Supplement, for good and valuable consideration, including the consummation of the transactions contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor, and their Estates, , in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, the Reorganized Debtor, or their Estates, as applicable, whether known or unknown,

foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, and their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against the Debtor or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Original Bond Documents, this Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Refinancing Transaction, the Plan, the 2024 Bond Documents, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan Support Agreement, or the Plan, the filing of this Chapter 11 Case, the pursuit of Confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to a Released Party's gross negligence, willful misconduct, fraud, or criminal activity as determined by a Final Order of the Bankruptcy Court; *provided* that any right to enforce the Plan and the Confirmation Order is not so released by section 10.6 of the Plan.  Nothing in section 10.6 of the Plan or this Confirmation Order shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action,

or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, unless otherwise expressly provided for in the Plan.

33. <u>Exculpation</u>.  The Exculpated Party shall not have or incur and is hereby released and exculpated from, any Claim, obligations, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss and liability for any Claim in connection with or arising out of the administration of this Chapter 11 Case, the negotiation and pursuit of the Plan Support Agreement, the Refinancing Transaction, the Plan, or the solicitation of votes for, or confirmation of, the Plan, the funding or consummation of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, or the transactions in furtherance of any of the foregoing, except for: (i) the liability that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release, or other agreement or document to be entered into or delivered in connection with the Plan; or (ii) the liability that would otherwise result from any such act or omission to the extent that such act or omission is determined to have constituted fraud, gross negligence, willful misconduct, or a criminal act as determined by a Final Order.

34. <u>Discharge of Claims</u>.  To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Causes of Action of any kind or nature whatsoever against the Debtor or any of its Assets or properties, including any interest accrued on such Claims from

and after the Petition Date, and regardless of whether any property shall have been abandoned by

order of the Bankruptcy Court, distributed, or retained under the Plan on account of such Claims

or Causes of Action.  Except as otherwise expressly provided by the Plan or the Confirmation

Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released

under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable

provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever,

including, but not limited to, demands and liabilities that arose before the Confirmation Date, and

all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Such

discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any

time, to the extent that such judgment relates to a discharged Claim.

   35. <u>Injunction</u>.  Except as otherwise expressly provided in the Plan or this Confirmation

Order, including but not limited to any right arising under or related to the 2024 Bond Documents,

from and after the Effective Date, all Persons and entities who have held, hold, or may hold Claims

are, with respect to any such Claim, to the fullest extent provided under section 524 and other

applicable provisions of the Bankruptcy Code, are permanently enjoined from (i) commencing or

continuing, in any manner or in any place, any suit, action or other proceeding of any kind

(including, without limitation, any proceeding in a judicial, arbitral, administrative, or other

forum);  (ii) enforcing, levying, attaching (including, without limitation, any prejudgment

attachment), collecting, or recovering in any manner or by any means, whether directly or

indirectly, any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing in any

manner, directly or indirectly, any lien or encumbrance of any kind; (iv)  asserting a setoff or right

of subrogation of any kind; or (v) commencing or continuing in any manner any action or other

proceeding of any kind that does not comply with or is inconsistent with the provisions of the Plan,

in each case on account of or with respect to any claim, demand, liability, obligation, debt, right,

cause of action, Interest, or remedy released or to be released, settled or to be settled, or discharged

or to be discharged under the Plan or this Confirmation Order against any person or entity so

released or discharged (or the property or estate of any person or entity so released, discharged).

All injunctions or stays provided for in this Chapter 11 Case under section 105 or section 362 of

the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full

force and effect until the Effective Date.

36.    <u>Immediate Binding Effect</u>.  Notwithstanding Bankruptcy Rules 3020(e) or 6004(h)

or any other Bankruptcy Rule, on the Effective Date, and effective as of the Effective Date, the

Plan shall bind, and shall be deemed binding upon, the Debtor, the Reorganized Debtor, any and

all Holders of Claims against and Interests in the Debtor, all persons and entities that are parties to

or are subject to the settlements, compromises, releases, discharges, and injunctions described in

the Plan, each person acquiring property under the Plan, any and all non-debtor parties to

Executory Contracts and unexpired leases with the Debtor and the respective successors and

assigns of each of the foregoing, to the maximum extent permitted by applicable law, and

notwithstanding whether or not such person or entity (i) will receive or retain any property, or

interest in property, under the Plan or (ii) failed to vote to accept or reject the Plan or

(iii) affirmatively voted to reject the Plan.

37.    <u>Protection Against Discriminatory Treatment</u>.  To the extent provided by section

525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all

Persons and Entities, including Governmental Units, shall not discriminate against the

Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter,

franchise or other similar grant to, condition such a grant to, discriminate with respect to such a

grant, against the Reorganized Debtor, or another Person or entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of this Chapter 11 Case (or during this Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in this Chapter 11 Case.

38.     Preservation of Privilege and Defenses.   No action taken by the Debtor or Reorganized Debtor in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or Reorganized Debtor, as applicable, including any attorney client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

39.     Injunction Against Interference with the Plan.   As of the date of this Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Reorganized Debtor's and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of the Plan.

40.     Release of Liens.   Except as otherwise provided in the Plan, this Confirmation Order, the 2024 Bond Documents, including to the extent the 2024 Bond Documents amend or restate the Original Bond Documents, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any

property of the Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

41.     <u>Consents and Approvals</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or governmental authority with respect to the implementation or consummation of the Plan and any other acts and transactions referred to in or contemplated by the Plan, the Disclosure Statement, any documents, instruments, or agreement that may be necessary or appropriate for the implementation or consummation of the Plan, and any other acts referred to in, or contemplated by the Plan.

42.     <u>Statutory Liens of Residents</u>.  Notwithstanding any provision in the Plan or this Confirmation Order to the contrary, any statutory lien of a Resident pursuant to section 246.111 of the Texas Health and Safety Code shall not be released.  For the avoidance of doubt, any such statutory lien remains subordinate to the liens securing the 2024 Bonds.

43.     <u>Governmental Units</u>.  Nothing in this Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, enjoins or affects: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("***Governmental Unit***") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Governmental Unit arising on or after the date hereof; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property on or after the date hereof; (iv) any liability to a Governmental Unit on the part of any non-Debtor; or (v) any setoff or recoupment rights of any Governmental Unit.  Nor shall anything in this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

44.     Further, nothing in this Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nor shall anything in this Order relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

45.     For the avoidance of doubt, the State of Texas and its agencies, including but not limited to the Texas Department of Insurance, opts out of any and all releases provided in the Plan.

46.     <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, on and after the Effective Date, pursuant to section 11 of the Plan and sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising under the Bankruptcy Code, arising in or related to this Chapter 11 Case or the Plan, or that relates to the matters set forth in section 11 of the Plan.

47.     <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

48.     <u>The Automatic Stay</u>. The stay in effect in this Chapter 11 Case pursuant to sections 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date and at that time shall be dissolved and of no further force of effect, subject to the injunctions set forth in

the Plan, this Confirmation Order, and/or sections 524 and 1141 of the Bankruptcy Code; *provided*, *however*, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements, and bills of sale) or the taking of such actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

49.     <u>Conflicts Between Confirmation Order and Plan</u>.    The provisions of this Confirmation Order and the Plan shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided*, *however*, that, if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

50.     <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

51.     <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.  If any or all of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation

Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

52.    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

53.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

54.    <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after, the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Bankruptcy Court, or further action by the respective officers or directors of the Debtor and with the effect that such actions has been taken by unanimous action of such officers and directors.

55.    <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>** (the "***Notice of Confirmation and Effective Date***"), to the United States Trustee, all parties that hold a Claim or Interest in this Chapter 11 Case, and any other party requesting notice under Bankruptcy Rule

2002.  The Notice of Confirmation and Effective Date shall also be posted on the Debtor's case

information website, available at https://restructuring.ra.kroll.com/Stayton/Home-Index.   Such

notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry

of this Confirmation Order and the occurrence of the Effective Date.

56.    <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be

substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

57.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan

in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a

waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety

and incorporated herein by this reference.

58.    <u>Waiver of Stay</u>.  The stay of this Confirmation Order provided by any Bankruptcy

Rule (including, without limitation, Bankruptcy Rules 3020(e) and 6004(h)) is hereby waived.

This Confirmation Order shall be effective and enforceable immediately upon its entry by the

Bankruptcy Court.

**###END OF ORDER###**

Order submitted by:


**BUTLER SNOW LLP**


By: */s/ Candice Carson*
Martin A. Sosland (TX Bar No.18855645)
Candice Carson (TX Bar No. 24074006)
BUTLER SNOW LLP
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Tel:  (469) 680-5500
Fax:  (469) 680-5501
E-mail:martin.sosland@butlersnow.com
            candice.carson@butlersnow.com


Adam M. Langley (admitted *pro hac vice*)
Kenneth Groce (admitted *pro hac vice*)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite500
Memphis, TN 38119
Tel:  (901) 680-7200
Fax:  (901) 680-7201
E-mail:adam.langley@butlersnow.com
            kenneth.groce@butlersnow.com


Xan Flowers (admitted *pro hac vice*)
BUTLER SNOW LLP
1819 Fifth Avenue North, Suite 1000
Birmingham AL 35203
Tel:  (205) 297-2200
Fax:  (205) 297-2201
E-mail:  xan.flowers@butlersnow.com


*Proposed Counsel for the Debtor*